**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

RAJARENGAN RAJARATNAM
5255 Collins  Avenue
Apartment 9E
Miami, FL 33140


                        Plaintiff,


               v.                         Case No.: 16-CV-654

                                       (LTS)


GALLEON MANAGEMENT, L.L.C.     **COMPLAINT**
590 Madison Avenue
New York, New York, 10022

GALLEON PARTNERS, SPC, L.P.
590 Madison Avenue
New York, New York, 10022

GALLEON OFFSHORE, SPC, L.P.
590 Madison Avenue
New York, New York, 10022

GALLEON SPECIAL OPPORTUNITIES
MANAGEMENT, LLC
590 Madison Avenue
New York, NY 10022

Serve on:
Corporation Service Company
2711 Centerville Rd. Suite 400
Wilmington, DE 19808

GALLEON SPECIAL OPPORTUNITIES
FUND, LTD.
590 Madison Avenue
New York, NY 10022

Serve on:
Registered Office
Walkers SPV Limited
Walker House
87 May Street
George Town
Grand Cayman KY 1-9002, Cayman Islands

GALLEON SPECIAL OPPORTUNITIES
MASTER FUND-SPC, Ltd.,
Galleon Crossover Portfolio
590 Madison Avenue
New York, NY 10022

Serve on:
Registered Office
Walkers SPV Limited
Walker House
87 May Street
George Town,
Grand Cayman KY 1-9002, Cayman Islands

GALLEON BUCCANEER'S OFFSHORE,
LTD.
Serve on:
Registered Office
Walkers SPV Limited
Walker House
87 May Street
George Town,
Grand Cayman KY 1-9002, Cayman Islands

SPECIAL OPPORTUNITIES OFFSHORE
LIQUIDATING TRUST
Serve: Richard Schutte
SPOTTAIL CAPITAL MANAGEMENT
LLC
24 Shallowbrook Road
Morganville, NJ 07751

RAJ RAJARATNAM
Devens Federal Medical Center
42 Patton Road
Ayer, MA 01432

RICHARD SCHUTTE
24 Shallowbrook Road
Morganville, NJ 07751

GEORGE LAU
641 Lexington Avenue
New York, NY 10022

SPOTTAIL PARTNERS, L.P.
641 Lexington Avenue
New York, NY 10022

SPOTTAIL CAPITAL MANAGEMENT
LLC
Serve: Richard Schutte
24 Shallowbrook Road
Morganville, NJ 07751

SPOTTAIL CAPITAL MANAGEMENT
LLC
24 Shallowbrook Road
Morganville, NJ 07751

CEDAR COVE CAPITAL, LLC
641 Lexington Avenue
New York, NY 10022

DELTA (CAYMAN) LIMITED
Serve: Campbell Corporate Services, Limited
Scotia Centre
P.O. Box 268
Grand Cayman, KY1-1104, Cayman Islands

GALLEON DIVERSIFIED FUND, LTD.
590 Madison Avenue
New York, NY l 0022

GALLEON TECHNOLOGY OFFSHORE,
LTD.

Serve on:
Registered Office
Walkers SPV Limited
Walker House
87 May Street
George Town,
Grand Cayman KY 1-9002, Cayman Islands

**Jury Trial Demanded**

Defendants

---

Plaintiff Rajarengan Rajaratnam, by his attorneys, for his complaint, against the above named defendants, alleges as follows:

## NATURE OF THE ACTION

1.      In or around 1997, Defendant Raj Rajaratnam and an individual by the name of Gary Rosenbach formed a series of entities and hedge funds generally known as the Galleon Group, LLC ("The Galleon Group").  The Galleon Group became one of the largest hedge fund management firms in the world, eventually managing over $7 billion. Over 100 people were employed by the Galleon Group.

2.      The Galleon Group was comprised of a series of operating units called "investment managers."  These units included Defendant Galleon Special Opportunities Management, LLC and Galleon Management, L.P.   Defendant Galleon Management LLC is or was the general partner of Galleon Management L.P.

3.      The Investment Managers provided various services to a variety of onshore and offshore "feeder funds," which in turn, invested in a variety of "master funds," located in the Cayman Islands (the "Funds").  The Funds were then sometimes organized around various "portfolios" which typically had a unified investment objective.  Defendants Galleon Special Opportunities Fund Ltd.; Galleon Special Opportunities Master Fund-SPC Ltd were all funds within Galleon Special Opportunities Management, LLC. Defendants Galleon Diversified Fund Ltd. and Galleon Buccaneer's Offshore Ltd., were funds within Galleon Management L.P.

4.      The Funds entered into agreements by which they agreed to indemnify the Investment Managers, along with the affiliates and employees of each Investment Manager, against certain losses and expenses arising in connection with services performed for the Galleon Group, and/or the Fund and any portfolio within the Fund  (collectively referred to herein as the "Indemnification Provisions.").

5.      The Investment Management firms, in turn, hired "portfolio managers" who were typically assigned to one or more portfolios.  They were compensated based on their generation of profits and losses. The Investment Manager was compensated by the Funds based on a flat fee of 2% of assets under management, and 20% of the profits.  A portfolio manager, such as Plaintiff, was paid at least one half of the 20%, or 10% or greater of the profits which were generated by his or her efforts.

6.      The claims within this complaint stem from Defendants' failure to indemnify Plaintiff and to pay him compensation.  As set forth below, during the relevant period herein (2007 to 2009), Plaintiff was employed as a portfolio manager and/or officer or affiliate of the Galleon Group and one or more of its Investment Managers.  Therefore he was entitled to compensation (10% of the profits he generated). For the portfolio he managed, Plaintiff

generated profits of approximately $83 million in 2009, which would entitled him to compensation in the amount of $8.3 million. He was also entitled to a bonus as a telecom analyst for that same year.

7.     As an employee and/or officer and/or agent, Plaintiff was an intended, express third party beneficiary of the Indemnification Provisions.  In defense of the civil and criminal cases brought against him and others related to his work for Galleon, Plaintiff incurred expenses, legal fees and other losses to which he was entitled to be indemnified by the Galleon Group, but was not.

## PARTIES

8.     At all times hereinafter mentioned, Rajarengan Rajaratnam ("Plaintiff") is a resident of the state of Florida with a residence also located in Washington, D.C.

9.     At all times hereinafter mentioned, defendant Raj Rajaratnam is a citizen of the State of New York and currently is incarcerated in the Devens Federal Medical Center, in Ayer, Massachusetts.

10.     At all times hereinafter mentioned, defendant Richard Schutte is an individual who resides at 24 Shallow Brook Rd., Morganville, NJ 07751 and had a principal place of business at 641 Lexington Ave, New York, New York 10022, and was the Chief Operating Officer and later the President of the Galleon Group.  Mr. Schutte is or was also the Managing Member of Cedar Cove Capital LLC. Later, he served as a trustee of various liquidating trusts and had a fiduciary duty with respect to Plaintiff as a result of this position.

11.     At all times hereinafter mentioned, defendant George Lau is an individual who resides at 9 Murray Street, Apt #5, New York, New York, 10007 and has a principal place of

business at 641 Lexington Ave, New York, New York 10022, and was at all relevant times the Chief Financial Officer and Chief Compliance Officer of the Galleon Group.

12.     At all times hereinafter mentioned, defendant Galleon Management, L.L.C. is a Delaware limited liability company that claims to have been, or to be, the sole general partner of Galleon Management, L.P. and of Galleon Partners, SPC L.P.  It is the management company for both. The principal office of Galleon Management, L.L.C. is, or was at all times relevant hereto, 590 Madison Avenue, 34th Floor, New York, New York 10022.  As the general partner of Galleon Partners, SPC L.P. and Galleon Management, L.P., Galleon Management LLC is liable for the obligations and debts of these entities.  Defendant Raj Rajaratnam was the Managing Member of Galleon Management, L.L.C.

13.     At all times hereinafter mentioned, defendant Galleon Partners, SPC L.P. was, or is, a Delaware limited partnership. Its principal place of business was designated in its Limited Partnership Agreement as 590 Madison Avenue, 34th Floor, New York, New York 10022. It was or is a limited partnership for onshore investments.

14.     At all times hereinafter mentioned, Defendant Galleon Offshore, SPC, LTD has asserted that it is an exempted company, incorporated and registered as a segregated portfolio company under the laws of the Cayman Islands, which was actively managed by Galleon Management, LP located at 590 Madison Avenue, New York, New York, and the individual Defendants. The Defendant invested funds in segregated portfolios of Galleon Diversified Portfolio, Galleon Technology Offshore, Ltd., and Buccaneer's Offshore Ltd.

15.     At all times hereinafter mentioned, defendant Galleon Buccaneer's Offshore, Ltd has claimed it is or was an exempted company incorporated under the laws of the Cayman Islands, but which was actively managed by defendants Raj Rajaratnam, Rick Schutte, George

Lau, and Galleon Management LP which has its principal place of business in New York, New York.

16.     At all times hereinafter mentioned, defendant Galleon Special Opportunities Management, LLC is, or was, a limited liability company organized under the laws of Delaware and is, or was, located at 590 Madison Avenue, New York, New York 10022.  Defendant Raj Rajaratnam was the Managing Member of Galleon Special Opportunities Management, LLC.

17.     At all times hereinafter mentioned, defendant Galleon Special Opportunities Fund, Ltd. has claimed that it is or was an exempted company incorporated and existing under the laws of the Cayman Islands, with registered offices located or previously located at Walkers SPV Limited, Walker House, 87 Mary Street, George Town, Grand Cayman KY1-9002. Galleon Special Opportunities Fund, Ltd. conducts business in the United States and is, or was, actively managed by Galleon Special Opportunities Management, LLC an investment manager located at 590 Madison Avenue, New York, 10022 and hence it was doing business within the United States. Galleon Special Opportunities Fund, Ltd. invested 'substantially all of its assets' through a master feeder structure and as such was a shareholder in Defendant Galleon Special Opportunities Master Fund, SPC Ltd.

18.     At all times hereinafter mentioned, defendant Galleon Special Opportunities Master Fund, SPC Ltd.-Galleon Crossover Portfolio is or was a master fund which received its investments from Galleon Special Opportunities Fund, Ltd. and whose form D filing with the U.S. Securities and Exchange Commission stated that its principal place of business was located at 590 Madison Avenue, 34th floor, New York, N.Y. 10022.

19.     At all times hereinafter mentioned, defendant SpotTail Partners, L.P. is Delaware limited partnership. Its principal place of business was designated in its Limited Partnership Agreement as 641 Lexington Avenue, New York, New York 10022.

20.     At all times hereinafter mentioned, defendant SpotTail Capital Management LLC is or was a limited liability company organized under the laws of Delaware.  Its principal place of business is or was 641 Lexington Avenue New York, NY  10022.

21.      At all times hereinafter mentioned, defendant Cedar Cove Capital, LLC is a Delaware limited liability company.  Its principal place of business is at 641 Lexington Avenue New York, NY  10022. Cedar Cove Capital LLC is an Investment Advisor of SpotTail Partners, LP.

22.     At all times hereinafter mentioned, defendant Galleon Special Opportunities Offshore Liquidating Trust is or was a trust organized under the laws of Delaware. Schutte, who sits on its board of trustees, resides at 24 Shallowbrook Road, Morganville, NJ 07751.

23.     At all times hereinafter mentioned, defendant Delta (Cayman) Ltd. has claimed that it is or was an exempted company incorporated and existing under the laws of the Cayman Islands, with registered offices located or previously located at 5th Floor, Harbour Place, 103 South Church Street, George Town, Grand Cayman, Cayman Islands.

24.     At all times hereinafter mentioned, defendant Galleon Diversified Fund, Ltd. is or was a fund operating from 590 Madison Avenue New York, NY 10022. This Defendant is or was a Master Fund. A portfolio under Defendant Galleon Partners, SPC LP invests or invested its assets in this Master Fund.

25.     At all times hereinafter mentioned, defendant Galleon Technology Offshore, Ltd. as claimed it is or was an exempted company incorporated under the laws of the Cayman Islands,

but which was actively managed by defendants Raj Rajaratnam, Rick Schutte, George Lau, and

Galleon Management LP which has its principal place of business in New York, New York.

## JURISDICTION AND VENUE

26.     Plaintiff filed a notice with summons pursuant to New York Civil Practice Law

and Rules ("CPLR") §3012(b) in in the Supreme Court of New York for the County of New

York on October 14, 2015.  On January 28, 2016, Defendant Galleon Special Opportunities

Master-Fund SPC, Ltd. filed a removal to this Court and on February 1, 2016, filed a notice of

removal to the County of New York Supreme Court.

27.     This complaint is filed pursuant to 28 USC § 1446(d), which stipulates that once

notice of removal has been filed, "removal is effected and State court shall proceed no further

unless and until the case is remanded."[1]

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

28.     Plaintiff was employed in various capacities within the Galleon Group from 2001

until the company ceased doing business. His role during all of these periods included that of

analyst.  From at least approximately December 2007 until November 2009, Plaintiff was an

employee of the Galleon Group, LLC including, but not limited to, Galleon Management, LP and

Galleon Special Opportunities Management, LLC, and portfolios and funds within those, which

include all the remaining Galleon Defendants.

29.     Between approximately July 2007 and November 2007, Plaintiff acted as a

consultant for the Galleon Special Opportunities Fund.  During December 2007, Plaintiff also

acted as a portfolio manager for Galleon Special Opportunities Fund. From January 2008 until

---

[1] Under 28 USC § 1447(c), Plaintiff has 30 days from the date the notice of removal was filed to file motion to remand, therefore does not waive any objections to removal to this Court.

September 2008, Plaintiff periodically acted as Portfolio Manager for Galleon Buccaneer's Fund. From October 2008 to December 2008, Plaintiff acted as an analyst for the Galleon Diversified Fund. From January 2009 until October 2009, Plaintiff was a Portfolio Manager for Defendant Galleon Special Opportunities Fund, Ltd. The Investment Manager of this fund was Defendant Galleon Special Opportunities Management LLC. In addition, from January 2008 to October 2009, Plaintiff acted as a senior telecom analyst for all Galleon Group funds.

30.     Beginning at some point prior to October 2009, certain criminal and civil investigations were undertaken by the Securities and Exchange Commission (SEC) and the United States Attorney's Office for the Southern District of New York. On or about October 16, 2009, the SEC filed a civil suit against Galleon Management, L.P, and Raj Rajaratnam. *Securities and Exchange Commission v. Galleon Management, L.P. et al,* civil action 09 cv-8811 (S.D.N.Y. 2009).

31.     On information and belief, Raj Rajaratnam and five others were arrested in October 2009, and subsequently indicted by a grand jury in December 2009.

32.     Plaintiff was not named in these initial civil or criminal proceedings but was identified as an unindicted co-conspirator.  He was later indicted in March 2013 but found not guilty by a federal jury.

33.     In May 2011, Raj Rajaratnam was found guilty on 14 charges of insider trading.

34.     On October 13, 2011, Raj Rajaratnam was sentenced to 11 years in prison and is currently serving his prison term in Devens Federal Medical Center.

I.     **Compensation Agreement**

35.     In approximately December 2007, immediately prior to re-commencing work as an employee of the Galleon Group, Plaintiff entered into an oral agreement with Raj Rajaratnam,

acting on behalf of the Galleon Group.  This oral agreement provided that he would be compensated for his services based on his yearly generation of profits for the Galleon Group. Plaintiff also received a letter in or around December 2007 setting forth certain terms of his employment, other than compensation and indemnification.

36.     Under the terms of a compensation agreement, the Galleon Group promised to pay Plaintiff an amount equal to 10% of the revenues that he generated each year for the applicable fund and/or portfolio to which he was assigned.

37.     Defendant Galleon Special Opportunities Fund, Ltd. was managed by Defendant Galleon Special Opportunities Management, LLC. Plaintiff was the portfolio manager for two portfolios within Galleon Special Opportunities Fund Ltd. during 2009.  Plaintiff, like other Portfolio Managers, was entitled to be compensated for his generation of profits as set forth above at the rate of 10% of the profits generated during calendar year 2009, in accordance with his employment agreement, both oral and written. This agreement to pay him 10% is evidenced in part, by certain written records showing that Plaintiff's "share" of the profits or loss in a portfolio was 10%.

38.     Plaintiff did, in fact, provide valuable services to Galleon Special Opportunities Management, LLC, to the Galleon Group, Galleon Special Opportunities Fund, Ltd. and to the Galleon Crossover Portfolio in 2009.

39.     Plaintiff produced profits of approximately $83 million during 2009, to which he was entitled to receive compensation of no less than 10% or $8.3 million.

40.     Plaintiff was not paid any of his $8.3 million in 2009, nor at any time thereafter, despite making repeated demands for such compensation.

41.     The Defendants have wrongfully failed to pay such amounts to Plaintiff.

## II. Indemnification

### a.  Basis of Indemnification

42.      Each Investment Manager had a contractual duty to insure that the relevant Fund provided the indemnity and honored the Indemnity Provisions and thus was obligated to enforce the Indemnity Provisions on behalf of and for the benefit of Plaintiff.  Certain Defendants, named in indemnification agreements also had a contractual duty of indemnification to Plaintiff.

43.      Plaintiff was entitled to be indemnified by the Galleon Group, from various sources, including but not limited to the terms of an Investment Management Agreement, which was amended and restated as of December 31, 2008, by and among Galleon Offshore, SPC Ltd. and Galleon Management, L.P.

44.      Section 7 of this agreement states as follows:

> [T]he Fund shall, to the fullest extent legally permissible under the laws of the State of Delaware, **indemnify and hold harmless the Affiliated Parties against any loss** (including losses due to trading error), liability  or expense (including without limitation, judgments, finds, amounts paid or to be paid in settlements and **reasonable attorney's fees and expenses**) incurred or suffered by an Affiliated Party in connection with the good faith performance by the Affiliated Party or its responsibilities to the Fund; provide, however, that nothing herein shall be deemed to protect an Affiliated Party against any liability to which it otherwise would be subject by reason of his, her or its gross negligence, willful misconduct or violations of applicable laws. (emphasis added)

45.       'Affiliated Parties' are indemnified against any loss,  including losses due to trading error, amount paid in settlements, attorney's fees and expenses, so long as they are incurred or suffered in connection with good faith performance by Affiliated party or its responsibilities to the Fund.

46.     This indemnification was offered by the "Fund," which in turn was defined as being "on behalf of each of the segregated portfolios established from time to time as provided in a certain Confidential Explanatory Memorandum."

47.     Those parties who were indemnified included any "Affiliated Party," which included directors, officers or employees of the Investment Manager.  The Investment Manager was Galleon Management, L.P.  Plaintiff, as an employee and/or consultant of Galleon Management, L.P. and therefore an "Affiliated Party" and was at all times relevant hereto entitled to be indemnified by the funds he worked for for his loss, liability or expense incurred or suffered in connection with his good faith performance of his duties.  With respect to the Fund, Galleon Offshore SPC, Ltd., these duties included advising and assisting Galleon Buccaneers Offshore Ltd., and Galleon Technology Offshore Ltd.

48.     Therefore Plaintiff was entitled to indemnification pursuant to the Investment Management Agreement.

49.     Plaintiff is entitled to recovery of his attorneys' fees and other expenses pursuant to another Investment Management agreement with the same indemnification provision, between Galleon Offshore SPC Ltd. as "the Fund" and Galleon Management LP as the Investment Manager. As a portfolio manager, and at other times, an analyst, for Galleon Offshore SPC Ltd., Plaintiff was entitled to indemnification from the related funds for loss, liability or expense incurred or suffered in connection with his good faith performance of his duties.

50.     The obligation to indemnify the Investment Manager, and its affiliates and employees is also evidenced by certain Confidential Explanatory Memoranda which reiterated the commitment to indemnify Affiliated Parties in the same language and in addition that the

"Affiliated Party will, upon request, and to the extent legally permissible, be advanced amounts in connection with the Fund's indemnification obligation...."

51.     In addition to the above indemnification, Plaintiff was entitled to be indemnified by Defendant Galleon Partners, SPC, L.P.  The Limited Partnership Agreement of Galleon Partners, SPC L.P. (dated January 1, 2007) by and among its general partner, Galleon Management, L.L.C., provided the following indemnity:

> The General Partner, the Investment Manager, each of their respective directors, members, shareholders, **officers, employees, agents and affiliates** and each person designated pursuant to Section 9.02 of this Agreement (each, an "Indemnitee") shall be indemnified and held harmless by the Partnership to the **fullest extent legally permissible** under and by virtue of the laws of the state of Delaware, as amended from time to time, from and against any and all loss, liability and expense (including without limitation, judgments, fines, amounts paid or to be paid in settlement and reasonable attorney's fees and expenses) incurred or suffered by the Indemnitee in connection with the good faith performance by the Indemnitee of his, her or its responsibilities to the Partnership; provided, however, that an Indemnitee will not be indemnified for losses resulting from his, her or its gross negligence, willful misconduct or violation of applicable laws and provided further, that any indemnification related to a particular Portfolio may only be paid from the assets of such Portfolio. . . The Partnership shall, in the discretion of the General Partner, advance amounts and/or pay expenses as incurred in connection with the indemnification obligation herein. (emphasis added).

52.     The Limited Partnership Agreement of Galleon Partners, SPC L.P. was reissued on January 2008.  The same indemnity language appears in the 2008 version of this partnership agreement.  Plaintiff was a third-party beneficiary of this re-issued limited partnership agreement, as well as all prior and subsequent amendments and changes.

53.     The Confidential Private Offering Memorandums for the Galleon Diversified Portfolios of Galleon Partners, SPC L.P. and Galleon Special Opportunities Fund, Ltd. include

an indemnification clause with similar language for the General Partner's officers, employees, agents, and affiliates. The General Partner is defined as Galleon Management, L.L.C.

54. In addition, it is believed that there were other contracts between the Investment Managers for the Galleon Group, and its various Funds, and that some or all would have pertained to Plaintiff. All of the various indemnity provisions above, and others which may pertain, are collectively referred to in this Complaint as the "Indemnity Provisions." Plaintiff was an intended, express, third party beneficiary of all of the Indemnity Provisions.

### a. Indemnification Expenses

55. Beginning at some point prior to October 2009, certain criminal and civil investigations of the Galleon Group were undertaken by the Securities and Exchange Commission (SEC) and the United States Attorney's Office for the Southern District of New York. On information and belief, for many months prior to October 2009, the Galleon Group, and its officers, directors, agents and attorneys were made aware that they were the target of a civil and criminal investigation, and that, accordingly, various officers, directors and employees knew that they would be seeking indemnification and advances of indemnification to cover their legal fees, expenses and other related losses.

56. Defendants knew that Plaintiff was entitled to be indemnified for his legal expenses, costs and other related losses as they were aware he was an Affiliated Party within the definition of the Indemnification Provisions. From October 2009, Defendants had reason to know that the criminal and civil investigations specifically included allegations that Raj Rajaratnam had given insider information to his brother, Plaintiff, and named Plaintiff as an unindicted co-conspirator.

57.     From October 2009, Plaintiff sought to cooperate with the Galleon Group and to provide assistance to his brother Raj in his criminal defense.  Plaintiff provided extensive assistance to the Galleon Group and Raj, despite being aware that it might make him a target for prosecution, and did so on the assurances, both written and oral, that his legal bills would be covered pursuant to the Indemnity Provisions in case of any such prosecution or civil action.

58.     Plaintiff incurred substantial costs and expenses while others were drawing substantial sums from the Galleon Group, supposedly as indemnification.  Plaintiff was entitled to be indemnified for such costs and expenses under the Indemnity Provisions but following a brief initial period of indemnification, was wrongfully denied such payment, as is set forth below.

59.     Plaintiff initially received some indemnification payments. Beginning in or around 2011, the Galleon Group made indemnification payments directly to Plaintiff's legal representative, David Tobin of Tobin, O'Connor & Ewing. These payments continued into February 2012, and totaled over $180,000.

60.     Plaintiff relied upon the continued payments as a condition to his providing assistance to Raj and his legal team, for which he was otherwise not compensated.

61.     Upon information and belief, certain officers, directors or employees of the Galleon Group received substantial monetary payments under the Indemnity Provisions, for legal fees, costs and expenses and that Raj Rajaratnam expended approximately $45 to $60 million in legal fees, but has claimed that he "waived" his right to indemnification and paid such expenses from his own funds.

62.     On March 21, 2013, the SEC filed a civil suit against Plaintiff for insider trading between January 2006 and August 2008, involving funds and portfolios which Plaintiff was

involved with in his capacity as an employee and/or agent and/or affiliate of Galleon

Management LP and Galleon Special Opportunities LLC.  Among the charges was an allegation,

that on several occasions, Plaintiff had used insider information to "trade profitably" on behalf of

a Galleon hedge fund he managed.

63.     On the same day, the US Attorney's office filed an indictment which charged

Plaintiff with securities fraud and conspiracy to commit securities fraud. The US Attorney

alleged that, in the course of acting as a fund manager at Galleon, Plaintiff had, in conspiracy

with Defendant Rajaratnam, made substantial profits on trades during 2008 which were based on

insider tips. These charges were directly related to Plaintiff's performance of responsibilities to

the funds, portfolios and Investment Managers within Galleon. Plaintiff was entitled to

indemnification for this action.

64.     Plaintiff denies all charges and was found not guilty of any criminal charges by a

jury.

### b.   Indemnification Activity following Indictment of Raj Rajaratnam and Galleon

65.     Following Raj Rajaratnam's arrest, the Galleon Group created a liquidating trust

to effectively funnel resources from the Galleon Group to give the appearance that there were no

funds available, in an attempt to defraud Plaintiff.

### i.   Indemnification Waiver

66.     At the same time, Defendants Schutte, Rajaratnam, and the Galleon Group agreed

on a conspiracy to waive the obligation of the Funds, including the obligations of Defendants to

indemnify the employees of the General Manager and Investment Manager, which included

Defendants Galleon Management L.L.C and Galleon Special Opportunities Management LLC

and to place a small dollar cap on the amount of funds available to honor fully the Indemnity Provisions. This purported to materially modify the Funds' obligation to indemnify individuals such as Plaintiff. This was undertaken without Plaintiff's knowledge.

67.     Raj Rajaratnam and other insiders, upon information and belief, were substantial investors in the Funds, and stood to reap large financial gains through the redemption of their interests, and the concurrent limitation on the rights of creditors/employees holding contingent claims for indemnification, such as Plaintiff.

68.     Because the charges against Defendant Rajaratnam and the Galleon Group included alleged interactions between Raj Rajaratnam and Plaintiff, and Plaintiff was identified as a co-conspirator when charges and claims were brought against Rajaratnam and Galleon Management LP, Defendants had actual knowledge that Plaintiff would incur indemnifiable costs and legal expenses.

69.     Accordingly, the Galleon Group and its officers and directors, including individual defendants, were under a contractual duty to insure that the Funds honored their contractual indemnity and preserved the Indemnity Provisions and did not take any action that would interfere with such contractual rights, nor favor insiders and cause injury to the employees of its Investment Manager. Further, the Funds themselves had a contractual obligation to honor their Indemnity obligation.

70.     Further, to the extent that Defendant Galleon Entities, including Galleon Management, L.L.C., Galleon Partners, SPC L.P. or any of the other Funds or Portfolios within the Galleon Group, were insolvent, then in such case such entity, and its managers and owners, had a fiduciary duty to all of their creditors, including Plaintiff.

71.     Instead, they took secret and intentional steps to interfere with and limit the Indemnity Provisions, all of which occurred after Plaintiff's rights to be indemnified had fully vested and could not be changed under applicable law.

72.     Thereafter, Defendants Galleon Special Opportunities Management LLC and Galleon Management LLC (as general partner of Galleon Management, LP), acting through the individual Defendants, along with the Funds, entered into an Indemnification Waiver and Release Agreement, dated March 11, 2010 (the "Indemnification Waiver") pursuant to which the Investment Management Companies, including Defendant Galleon Special Opportunities Management, L.L.C. waived their right, and the rights of their employees, including Plaintiff to be indemnified by the Funds.

73.     The Indemnification Waiver also provided that instead of the uncapped existing indemnity obligation, the Funds' obligation to all indemnified individuals would be capped at a maximum of 75 basis points of the net asset value of each Fund as of November 30, 2009 ("the cap").

74.     Upon information and belief, thereafter, the aggregate Capped Amount was approximately $18 million, which was later disclosed as not being sufficient to pay all indemnity claims, including that of Plaintiff.  Contrary to the explicit statement of the Indemnification Waiver, no other assets were made available for payment of indemnity obligations.

75.     The existence of the Indemnification Waiver was intentionally concealed by Defendants from Plaintiff from its execution in 2010 until 2013. The amount of the cap was not revealed until around early 2015.

76.     These efforts to limit Defendants' contractual obligation to indemnify its employees and agents were undertaken in anticipation of additional charges being brought

against them. Under Delaware judicial decisions, the changing or alteration of a right to indemnification cannot be made to affect indemnification rights which have vested.  The Indemnification Waiver contravened applicable law, and was thus unlawful and unenforceable.

77.      The failure to disclose the existence of the Indemnification Waiver and the agreement to cap or to otherwise limit the available funds to honor the Indemnity Provisions was a fraudulent concealment of a material fact and of material information, which was withheld for the purpose of misleading Plaintiff into believing that the Galleon Group would fulfill its obligations under the Indemnity Provisions.

<em>ii.    Liquidating Trusts</em>

78.      In addition to the Indemnification Waiver, part of the wind down process for the Galleon Group was to liquidate the holdings of its funds and use the funds to pay investors. To carry out this liquidation process, a number of liquidating trusts were set up.  Defendant Schutte and others, including Defendant Lau, sat on the board of these trusts for the purported aim of supervising the transfer of the assets from the Galleon Group's funds to the trusts and the subsequent transfer from the liquidating trusts to the investors.

79.      On or about November 2, 2010 the Galleon Group executed a certain Galleon Offshore Liquidating Trust which pertained to the liquidation of Defendant Galleon Offshore SPC, Ltd.  ("Offshore Trust").  Galleon Offshore SPC, Ltd. was one of the Feeder Funds which had agreed to provide indemnification to the Investment Managers and its employees, including Plaintiff.

80.       On or about November 4, 2010 the Funds and the Galleon Group created a certain trust known as the Galleon Onshore Liquidating Trust, which Trust purported to govern the liquidation of the assets of Defendant Galleon Partners, SPC, L.P. (the "Onshore Trust.").

81.     On or about November 24, 2010, the Galleon Group created the Special Opportunities Offshore Liquidating Trust and related thereto, on or about December 7, 2010 the parties entered into a certain Liquidating Support Services Agreement pertaining to the liquidation of the assets of Galleon Special Opportunities Fund, Ltd.

82.     The purpose of these Trusts, among others, was to permit the investors in the various portfolios to be redeemed and to thus receive a return of their investment.

83.     In reality, Trusts were another supposed mechanism for further capping and eliminating the obligation to pay Indemnified Persons under the Indemnity Provision, and hence was an intentional scheme to limit funds available to pay claims to creditors in order to permit distributions to Unitholders, which included Raj and, upon information and belief, Schutte and Lau.

84.     Upon information and belief, the purpose of the cap was to permit Raj Rajaratnam to redeem his shares from the Funds and thus to withdraw his own "investments" in the various Funds, without payment in full of amounts due to other creditor/employees who were entitled to be indemnified.

85.     As part of the Liquidating Trust, each of the specific portfolios was supposed to hold funds in a reserve account for the payment of indemnification claims although the existence of such reserve accounts was kept secret from Plaintiff at all times.

86.     Each Trust stated it would assume the obligations of the Feeder Fund and with respect to the indemnity, solely to the extent of the reserves deposited in the reserve accounts pursuant to the Indemnification Waiver.

87.     Further, it provided that any Indemnified Person shall have recourse only to the assets of the relevant Series.  The Reserves were to be held until three months after the criminal

and civil insider trading charges and claims against Raj Rajaratnam and Galleon Management, L.P. were adjudicated, including all appeals or rights of appeal.

88.     By virtue of the creation of the Trusts, the Trusts and its Board, of which Schutte was a member, then became fiduciaries and were under a fiduciary duty to Plaintiff and all beneficiaries to treat all creditors fairly.  The acts complained of herein were in breach of this fiduciary duty.

89.     Neither the Trusts nor the Trustees complied with their fiduciary duty to the beneficiaries of the Trust.

90.     The Liquidating Trusts failed to preserve sufficient assets to pay the full claims of Plaintiff and the Galleon Group would later assert that the Capped Amount had been substantially depleted, and that as a result, Defendant Entities lacked the financial ability to pay the Indemnity Claim of Plaintiff.

91.     In or around 2011, Galleon Management LP purported to assign its rights under the Investment Management agreement to Defendant Delta (Cayman) Limited, which supposedly agreed to assume all liability for the Indemnification Obligations, including some of those funds which Plaintiff managed or assisted with. It is believed that the other Investment Managers, including Defendant Galleon Special Opportunities Management LLC, did the same.

92.     By making such a conveyance, the Investment Managers had thereby transferred their contractual rights to receive substantial payments from the various Funds which they managed, including their entitled to 2% of assets under management and 20% of profits.  As of this filing, the date of this transfer is unknown and the amount received by the Galleon Group is unknown.  It is believed and therefore alleged that the result of this transfer was done knowingly and intentionally to render the Galleon Group unable to pay the claims of its creditors.

93.     No reasonable care was taken by the Galleon Group or Defendant Delta to insure that funds would be available for Plaintiff, despite knowledge of his right to indemnification.

iii.     *Use of the Liquidating Trust and Indemnification Waiver to Defraud Plaintiff*

94.     The existence of the Indemnification Waiver, the cap and the Reserve Account was kept secret from Plaintiff at all relevant times.  By keeping the cap secret, it enabled certain insiders to authorize redemptions and disbursements to themselves as a return of their "investments" and at the same time to deplete the available funds to Plaintiff, despite express knowledge that Plaintiff was entitled to be indemnified.

95.     As a result of the voluntary surrender of a valuable asset (the right to be indemnified) and the concurrent transfer of assets (see below), the Galleon Group essentially rendered itself incapable to meet its Indemnity Obligations.

**IV.          2012 Settlement Agreement**

96.     From late 2009 until mid-2011, Plaintiff was engaged in assisting Raj in his trial. While other employees were negotiating the payments of their commissions, Plaintiff was assured by Raj, Schutte, and Lau, that he would be paid, and deferred reaching final agreement during this stressful period for his brother.

97.     In late 2011, without access to the Galleon Group records, unaware of the Indemnification Waiver, the Liquidating Trusts, the secret cap on the Indemnity Provisions, and unaware of the depletion of the funds available for payment of the Indemnity Provisions (the Reserve Accounts), Plaintiff then sought to resolve his entitlement to unpaid commissions, bonuses, and indemnification.

98.     During the period of August to November 2011, Plaintiff made repeated inquiries of Schutte, Lau, and Raj as to why he had not been paid his compensation.  Raj, Schutte, Lau, and the Galleon Group effectively stonewalled him and refused to provide any meaningful response as to why he had not been paid his commissions, despite their representations that he would be so compensated.

99.     Settlement discussions then ensued in which Schutte and Lau falsely misrepresented and concealed material information from Plaintiff, and did thereby fraudulently induce him into the execution of the January 13, 2012 Settlement Agreement.

100.    Plaintiff was defrauded by the Galleon Group through the providing of false information and documents concerning the dollar amount of the revenues or losses which he had generated and thus what he was due.

101.    Plaintiff requested that the Galleon Group provide him with the financial information and records which would accurately show the profit and loss generated by his management in 2009.

102.    In response, the Galleon Group, acting through Defendants Schutte and Lau, and under the direction of Defendant Raj Rajaratnam, deliberately falsified information and misled Plaintiff.  Defendants Galleon, Schutte, and Raj, intentionally misrepresented the material facts, and knowingly made false statements to the effect that a loss had occurred in a Portfolio supposedly being managed by Plaintiff, and that because of such fictitious losses he was not entitled to more than nominal compensation.  In truth, the Portfolio was one which had been managed by Raj Rajaratnam.

103.    In reality, Plaintiff had earned over $83 million of profits for the Galleon Group in 2009 as a portfolio manager for within Defendant Galleon Special Opportunities Fund, LLC.

104.   This misrepresentation of a material fact was intentional, and was done in order to induce Plaintiff to enter into the Settlement Agreement, and to compromise his rightful claim to compensation based on the normal range of 10% of such revenues, in this case, $8.3 million.

105.   Plaintiff was entitled to rely and did in fact rely upon the false representation and concealment of the material facts concerning his entitlement to compensation.  Plaintiff was no longer an employee of Galleon and had no access to the books and records and had to rely upon the false statements made by Schutte, and directed by Raj Rajaratnam.

106.   The Galleon Group, Schutte, Lau, and Raj wrongfully and intentionally failed to disclose material information about the ability of the Galleon Group to honor the Indemnity Provisions.

107.   At the time of the execution of the Settlement Agreement, Plaintiff's right to be indemnified for his costs and expenses and losses in connection with the multiple governmental investigations had vested. Thereafter, he continued to accrue costs, expenses and losses which were properly included within the Indemnity Provisions.

108.   At the time of the execution of the Settlement Agreement, Plaintiff explicitly made clear that a material inducement to his agreement to execute the Settlement Agreement was that it would not affect the indemnification obligations which the Galleon Group had to him.

109.   In fact, the Settlement Agreement included an express statement that Plaintiff did not release, discharge, or waive his indemnification rights in executing the agreement.

110.   Despite having expressly communicated to the Galleon Group, and its agents and attorneys, that the honoring of the indemnification rights which had vested was a condition to his willingness to execute the Settlement Agreement, Raj, Lau, Schutte, and the Galleon Group, and its officers and agents fraudulently concealed and failed to disclose that, as of the date of the

Settlement Agreement, the Galleon Group had effectively made the honoring of the Indemnification Provisions substantially impossible, or of little value using the mechanisms of the Indemnification Waiver, cap and liquidating trusts discussed above.

111.    Defendants, acting through Lau, Schutte and others, intentionally concealed the existence and the terms of the Indemnification Waiver, the Liquidating Trusts, the "cap" on the Funds' liability to pay indemnity claims, as well as the on-going depletion of the amount held in the Reserve Accounts, such that, Galleon was able to claim that available funds to honor the indemnity were substantially exhausted.

112.    Thus, having represented and promised it would honor the Indemnity Provisions, and despite knowing it was material to Plaintiff, Defendants intentionally and deliberately failed to disclose that the Funds and the Galleon Group had rendered itself incapable of honoring the Indemnity Provisions, and that the Indemnity Provisions would not be honored.

113.    The concealment and non-disclosure was the result of an agreement and civil conspiracy by and among Raj Rajaratnam, Richard Schutte, the Galleon Group and its officers, directors and agents and done for the purpose of private gain for the insiders of the Galleon Group and to cause injury to Plaintiff.

114.    As a third act of fraud and non-disclosure, the Galleon Group would later contend that it had intentionally drafted the Settlement Agreement in such a way as to not preserve any of the contractual indemnification provisions which Plaintiff had expressly stated was material to his entering into the agreement.  In short, the Galleon Group secretly intended not to honor the obligation to honor the Indemnity Provisions at the time of the execution of the Settlement Agreement.  While this post-hoc interpretation is not a valid reading of the Settlement

Agreement, it demonstrates that the Galleon Group did not intend to comply with the terms of the January 13, 2012 Settlement Agreement which preserved the Indemnification Provisions.

115.    In December 2013, Plaintiff was informed he was being denied indemnification in part on the basis that the Settlement Agreement only covered an indemnification obligation "required by applicable law," and that, in its erroneous view, there was not then, and never had been, any such indemnification right.

116.    Under this viewpoint, the manifested intent not to waive the indemnity rights was a material misrepresentation intended to induce Plaintiff to sign away his other rights. Defendants knew that the preservation of indemnification was a material consideration because Plaintiff made to an express request that the indemnity be preserved.  Despite this, Galleon, Schutte, Lau, and Raj never intended to preserve any indemnification rights, and had thus defrauded Plaintiff. In short, Galleon never intended to honor the Settlement Agreement as it pertained to preserving Plaintiff's rights to indemnification.

117.    Plaintiff was provided with a proposed Settlement Agreement in which he was urged to agree to accept $125,000 in settlement of his claim which he believed to be $8.3 million.  When Plaintiff voiced concern over the amount, Schutte coerced Plaintiff into signing the settlement agreement by telling him that was all Plaintiff would receive and any attempt to recover the amount owed through the judicial system would not be successful.

118.    Plaintiff only entered into this agreement in reliance on the false misrepresentations made to him and as a result of the non-disclosures of material facts. Plaintiff was deceived and coerced into executing the Settlement Agreement and would not have entered into the Settlement Agreement had Galleon disclosed the true facts concerning the revenues that he had generated, the Indemnification Waiver, the Liquidating Trusts, the secret cap, the

depletion of the cap, and its intention from the outset not to honor any of the contractual

Indemnity Provisions.

119.    Raj Rajaratnam, Schutte and the Galleon Group had actual knowledge that (a)

Plaintiff had been the subject of an ongoing investigation, (b) was about to be charged with civil

and criminal offenses, and (c) had incurred large losses, expense and legal fees which were

covered by the Indemnity Provisions.

120.    In early 2013, Raj Rajaratnam, Schutte, Lau, and the Galleon Group represented

that Plaintiff was entitled to indemnification against liability incurred in connection with his

employment with the Galleon Group.  Thus, the defendants have admitted that the legal fees and

related expenses which Plaintiff had incurred or would incur, in connection with his employment

by the Galleon Group, were covered by the terms of the Indemnity Provisions and that the

execution of the 2012 Settlement Agreement did not waive this indemnification right.

121.    Subsequent to 2012 Settlement Agreement, Defendants continued to acknowledge

entitled to indemnification. In or around this same time, Defendants also revealed, for the first

time, the existence of the cap. Further, they acknowledged that the funds for indemnification had

been substantially depleted.  Defendant Schutte represented to Plaintiff that there was only

$14,000 in remaining funds, which statement it is believed was knowingly false and made with

an intent to deceive Plaintiff. This was an acknowledgement and admission that, through the

wrongful acts of the defendants, the Galleon Group had been impoverished and left with

insufficient funds and capital to pay their lawful obligations, and that such had been done at the

direction of, and with the express approval of Raj Rajaratnam.

122.    On information and belief, if the supposed amount of funds available had been

capped and subsequently depleted, this supposed depletion was the result of voluntary payments

made to certain insiders of the Galleon Group, that such depletion was the result, in whole or in part, by the disbursements that were made by the private Trust, as part of the liquidation and wind down, and under the direction of its board, including the defendant Schutte.

123.    Despite the statement that the funds available to pay the Indemnity Provisions had been substantially depleted, it is believed that this statement may also have been false and made with the deliberate intention to defraud Plaintiff.  On information and belief, after the Galleon Group claimed it had depleted the fund available for the Indemnity Provisions, it nevertheless subsequently made substantial payments to others.

### V. Breach of 2012 Settlement Agreement

124.    In 2013, Plaintiff continued to incur legal expenses and costs in anticipation of the likelihood of indictment.

125.    On March 21, 2013, Plaintiff was indicted.  The allegations concerned events and activities undertaken while Plaintiff was an employee of Galleon Group, and in furtherance of his duties while employed by the Galleon Group.

126.    On or about August 13, 2013, Plaintiff, through his counsel, requested that the Galleon Group, honor the obligation to indemnify Plaintiff and pay for the fees and expenses in connection with the SEC civil suit and the federal criminal proceeding.  This request to indemnify was made pursuant to applicable law and all applicable agreements.

127.    Plaintiff's request for indemnification was denied.  The Galleon Group wrongfully breached its obligations to indemnify Plaintiff and then declined to make any further payments to him under the Indemnity Provisions, despite being obligated to do so.

128.    The Galleon Group refused to provide any indemnification payment on the basis that that Plaintiff had supposedly waived his right to indemnity in the January 2012 Settlement Agreements.  This denial constitutes wrongful breach of the Indemnity Provisions.

129.    The actions of the Galleon Group in failing to honor the express carve out in the January Settlement Agreement for indemnification was a material breach of that Agreement. Therefore Plaintiff is not bound by the terms of the Settlement Agreement, including his agreement not to seek additional compensation for his efforts as a portfolio manager.

130.    Without the indemnification, Plaintiff was forced to bear the full financial burden of his defense of both the civil and criminal charges.  Those expenses and costs were in excess of $2 million, plus potentially an additional $2 million for services rendered by the Gitner firm.

131.    Plaintiff was acquitted of all criminal charges.

132.    On or about October 23, 2014, Plaintiff agreed to settle all civil allegations by the SEC with no admission of liability.

133.    Under applicable law and contractual obligations of defendants, Plaintiff is legally entitled to indemnification.

134.    The Galleon Group has wrongfully failed to honor its obligations under the Indemnity Provisions. Defendant Delta (Cayman) Limited, which supposedly agreed to assume all liability for the Indemnification Obligations, has similarly failed to honor these obligations.

## COUNT ONE
## BREACH OF CONTRACT: FAILURE TO HONOR INDEMNITY PROVISIONS

135.    The factual allegations of the preceding paragraphs are incorporated herein as if fully set forth.

136.    Members of the Galleon Group, including Defendants Galleon Management LLC (as general partner of Galleon Management LP), Galleon Offshore SPC Ltd., Buccaneer's

Offshore SPC Ltd, Galleon Partners, SPC L.P., Galleon Special Opportunities Management, LLC, Galleon Special Opportunities Fund Ltd.; Galleon Diversified Fund, Ltd.; and Galleon Technology Offshore, Ltd. were contractually obligated to indemnify Plaintiff from and against any and all loss, liability and expense (including without limitation, judgments, fines, amounts paid or to be paid in settlement and reasonable attorney's fees and expenses) incurred or suffered by him in connection with the good faith performance by Plaintiff of his responsibilities to the Galleon Group. Defendant Delta (Cayman) Limited, which supposedly agreed to assume all liability for the Indemnification Obligations, were also so obligated.

137.    Plaintiff was an intended, and express, third party beneficiary of the Indemnity Provisions, including but not limited to those found in the Limited Partnership Agreements of Defendant Galleon Partners, SPC L.P. and the investment management contracts between Defendant Galleon Special Opportunities Management, LLC and the various funds and portfolios for which it provided investment services. Defendant Galleon Management LLC, as the general partner of Galleon Partners, SPC LP, is also liable for the breach. The explicit wording of the Indemnification Provisions and their preservation in multiple revised versions of the IMAs, Confidential Explanatory Memoranda, and Limited Partnership Agreements demonstrate an intent to confer this benefit on Plaintiff.

138.    Plaintiff was led to believe that he would be fully indemnified to the fullest extent legally permissible by the Galleon Group, and each of the various Portfolios and Funds as well as the Partnership, and its owner.  He was entitled to rely on such belief, both as a matter of contract law and under the common law of the state of Delaware.

139.    Plaintiff incurred loss, liability and expense in connection with his good faith performance of his responsibilities to the Galleon Group.

140.    The Galleon Group breached its obligations under the Indemnity Provisions by failing to make payments under the indemnification agreement.

141.    As a direct and proximate result of such breach, Plaintiff has suffered economic and financial damage.

142.    WHEREFORE, Plaintiff seeks monetary damages, including consequential and direct damages for breach of contract from the Galleon Group and/or any affiliate which it is determined was responsible for the payment of such indemnification.

**COUNT TWO**
**DECLARATORY JUDGMENT:**
**INDEMNFICATION WAIVER, CREATION OF "CAPPED AMOUNT" OR ANY**
**DIMINUTION OF INDEMNITY RIGHTS ARE UNENFORCEABLE AS TO**
**PLAINTIFF**

143.    The factual allegations of the preceding paragraphs are incorporated herein as if fully set forth.

144.    The Indemnification Waiver and the cap on funding was the result of an insider transaction by and among the Galleon Investment Managers, including Defendants Galleon Management LLC and Galleon Special Opportunities Management LLC, and the various Funds, including Defendants Galleon Partners SPC L.P., Galleon Offshore SPC Ltd., Galleon Buccaneer's Offshore Ltd., Galleon Diversified Fund, Ltd, Galleon Special Opportunities Fund Ltd., and Galleon Technology Offshore, Ltd and was then made a part of the Liquidating Trusts, including Defendant Galleon Special Opportunities Master Fund-SPC Ltd, as set forth above.

145.    Under Delaware law, neither a right to indemnification nor advancement of expenses can be impaired or eliminated "after the occurrence of the act or omission that is the subject of the civil, criminal, administrative, or investigative action, suit or proceeding for which indemnification or advancement of expenses is sought." Del. Code. Ann. tit. 8 § 145. Therefore,

any agreement to alter the rights of Plaintiff to receive indemnification after his rights had vested is a legally nullity, and thus the Indemnification Waiver, and the provisions of the Liquidating Trusts which purport to alter the indemnification rights are null and void.

146.     The cap agreement and the Indemnification Waiver and the establishment of the Reserve Accounts was entered into after Plaintiff's entitlement to be paid under the Indemnity Provisions had fully vested, and accordingly, under Delaware law, and other applicable law, the Galleon Group could not lawfully rescind, alter, or diminish such vested rights.

147.     Accordingly, all such attempts to limit or restrict Plaintiff's right to indemnity after such have vested is a legal nullity and cannot be enforced.

148.     WHERERFORE, Plaintiff seeks a declaratory judgment that the Indemnification Waiver, the Liquidation Trusts, and any purported change in the relevant limited partnership agreement or limited liability company agreement is either a legal nullity, or alternatively, cannot be enforced against him as his rights had duly vested prior to its execution.

## COUNT THREE
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

149.     The allegations of the preceding paragraphs are incorporated herein as if expressly set forth.

150.     Based on the expressed context and nature of the employment arrangements between Plaintiff and the Galleon Group, particularly Defendants Galleon Management LLC and Galleon Special Opportunities Management LLC, it was mutually understood that Plaintiff was to be fully indemnified, and paid commissions based on the production of profit for the various funds and portfolios for whom he provided services and that Galleon would not undertake

deliberate acts to injure and impair his full enjoyment and entitlement to the Indemnity Provisions.

151.    Under Delaware law, a duty of good faith and fair dealing is implied in every contract.

152.    Based on the allegations set forth above, Defendants breached their covenants of good faith and fair dealing.

153.    The Defendants were under a duty to act reasonably and fairly with respect to any such cap, and to take reasonable steps to insure that funds were reserved in order to make payments to all who were lawfully entitled to be paid under the Indemnity Provisions.

154.    Instead, Raj Rajaratnam and the Galleon Group, along with its agents and officers acted solely for the benefit of Raj Rajaratnam, and with utter disregard for the rights of Plaintiff.

155.    Such actions included, as set forth above, the creation of a so-called "cap" negotiated among insider parties, and then the exhaustion of such cap, without any reserve or other action being taken to insure that the Galleon Group could honor the Indemnity Provisions with respect to Plaintiff.

156.    As a result of such misconduct and breach, Plaintiff suffered financial and other economic damage.

## COUNT FOUR
## UNJUST ENRICHMENT: QUANTUM MERIUT

157.    The allegations of the preceding paragraphs are incorporated herein as if expressly set forth.

158.    Alternatively, and in the event that this Court determines that an express or implied contract does not govern the relationship between Plaintiff and the Defendant Entities, or one or more of its funds or affiliates, then in such case, Plaintiff contends that he is entitled to be

compensated for the value of the services that he provided including an amount to be determined in part, by (a) all unpaid commissions and (b) all losses, expenses, costs and attorney fees incurred in connection with the allegations against him for insider trading and arising under the criminal and civil charges initiated against him.

159.     The wrongful failure of the enumerated Defendants to honor their obligations under the Indemnity Provisions resulted in Plaintiff paying for all of his own defense costs and settlement obligation.

160.     Further, Defendants have been unjustly enriched by obtaining the valuable services of Plaintiff, as set forth above, for which it has wrongfully refused to pay.

161.     Plaintiff should be compensated for the value of the services he has provided to the Galleon Group, and/or in the amount by which the Galleon Group has been unjustly enriched by having the value of his services, without having paid for such services.

## COUNT FIVE
## CIVIL CONSPIRACY

162.     The allegations of the preceding paragraphs are incorporated herein as if expressly set forth.

163.     As set forth above, there was a confederation or combination of two or more persons, namely, Raj Rajaratnam, Richard Schutte, Galleon Partners, SPC L.P., Galleon Management, LLC, Galleon Management, L.P. and Galleon Offshore SPC, Ltd.

164.     Richard Schutte, George Lau, and Raj Rajaratnam aided and abetted the breach of fiduciary duty by the Galleon Group by personally directing, inspiring and executing the wrongs complained of herein.

165.     The combination or confederation committed an unlawful act in furtherance of that conspiracy by intentionally breaching the Indemnity Provisions, by fraudulently concealing

the existence of a material fact, namely, the "cap," by providing Plaintiff with false and misleading information about the actual amount of profits and earnings that he had generated in 2008 and 2009, and by systematically seeking to impair the financial ability of the Galleon Group to honor the Indemnity Provisions as to Plaintiff.

166.     Defendants Raj Rajaratnam and Schutte further conspired and agreed to deny Plaintiff his compensation that he was entitled to, by the acts set forth above, including concealing the correct calculation of his compensation and presenting to him knowingly false statements of accounts for which he had no responsibility.

167.     As a direct and proximate result of the unlawful acts taken in furtherance of the conspiracy, actual damage was caused to Plaintiff who was denied the benefit of reimbursement and advances for his legal fees and expenses, and thus suffered a direct monetary loss.

168.     That as a result of the conspiracy all of the defendants are jointly and severally liable for the wrongs complained of in this Complaint.

## COUNT SIX
## BREACH OF FIDUCIARY DUTY

169.     The allegations or the preceding paragraphs are incorporated herein as if expressly set forth.

170.     On or about November 2, 2010 the Galleon Group executed Defendant Galleon Offshore Liquidating Trust which pertained to the liquidation of Defendant Galleon Offshore SPC, Ltd.  Defendant Galleon Offshore SPC, Ltd. was one of the Feeder Fund which had agreed to provide indemnification to the Investment Managers, and its employees, agents and affiliates, including Plaintiff.

171.     On or about November 24, 2010, the Galleon Group created Defendant Special Opportunities Offshore Liquidating Trust and related thereto, on or about December 7, 2010 the

parties entered into a certain Liquidating Support Services Agreement pertaining to the liquidation of the assets of Galleon Special Opportunities Fund, Ltd.

172.    Richard Schutte is identified in the Trust referred as one of the principal trustees, and as such has a fiduciary duty to all parties who may be entitled to receive a distribution from the various trusts, including creditor/employees such as Plaintiff.

173.    Defendants Rajaratnam, Schutte and Lau disregarded and breached any fiduciary duty, and instead used the various trusts to manipulate Plaintiff and to increase their own gain, while causing financial loss to Plaintiff.

174.    Defendant Galleon Special Opportunities Liquidating Trust, and Schutte, as its representative, trustee or receiver, or other similar capacity, have breached their fiduciary duty by the wrongful acts complained of herein and by failing to preserve the assets of the entities, and by permitting insiders to receive financial gain and benefit themselves privately all at the expense of Plaintiff.

175.    The Galleon Group and its officers and Schutte breached their fiduciary duty on account of and by the acts set forth above.

176.    Raj Rajaratnam, Schutte and Lau knowingly participated in the breach of the fiduciary duty; said defendants were aware of the fiduciary duty of the Trusts and directed and conspired that such fiduciary duty be breached.

177.    Each of the Defendants who had contracted to provide indemnification to employees, agents and affiliates of the Investment Managers also breached the fiduciary duty to Plaintiff as a third party beneficiary: Galleon Management LLC (as general partner of Galleon Management LP), Galleon Offshore SPC Ltd., Buccaneer's Offshore SPC Ltd, Galleon Partners,

SPC L.P., Galleon Special Opportunities Management, LLC, Galleon Special Opportunities

Fund Ltd.; Galleon Diversified Fund, Ltd.; and Galleon Technology Offshore, Ltd.

178.    As a direct and proximate result of such breach, Plaintiff as one who should have

received pro rata and equal treatment under any such trust, has been damaged.

## COUNT SEVEN
## TORTIOUS INTERFERENCE WITH CONTRACT

179.    The allegations of the preceding paragraphs are incorporated herein as if

expressly set forth.

180.    As set forth above, the Galleon Group, including Galleon Management LLC (as

general partner of Galleon Management LP), Galleon Offshore SPC Ltd., Buccaneer's Offshore

SPC Ltd, Galleon Partners, SPC L.P., Galleon Special Opportunities Management, LLC, Galleon

Special Opportunities Fund Ltd.; Galleon Diversified Fund, Ltd.; and Galleon Technology

Offshore, Ltd.,  breached their contractual obligations to Plaintiff to honor the Indemnity

Provisions and to pay to Plaintiff his agreed upon commission and salary and any other related

form of compensation.

181.    Raj Rajaratnam, Richard Schutte and George Lau, tortiously interfered with the

contract rights of Plaintiff by deliberately causing the Galleon Group to breach its contractual

obligations to Plaintiff.

182.    Raj, Schutte and Lau wrongfully directed the Galleon Group to manufacture

untrue and bogus reason for not honoring the obligations to pay Plaintiff his contractual

commission nor to provide him with the rights under the Indemnity Provisions.

183.    As a direct and proximate result of such tortious interference, the Galleon Group,

including Galleon Offshore SPC, Ltd. and Galleon Special Opportunities fund, Ltd, and the

respective portfolios within each, did in fact breach their obligations, which breach was the direct result of the interference by the defendants Raj, Schutte, and Lau.

## COUNT NINE
## FRAUDULENT INDUCEMENT TO ENTER INTO JANUARY 2012 SETTLEMENT AGREEMENT: AIDING AND ABETTING FRUAD

184.    The allegations of the preceding paragraphs are incorporated herein as if expressly set forth.

185.    The January 13, 2012 Settlement Agreement was entered into as a direct result of the fraudulent concealment of material facts and the intentional misrepresentation of facts. The named parties to the settlement agreement were Plaintiff Rajaratnam and Galleon Management, L.P.  As the general partner for Galleon Management L.P., Galleon Management LLC is liable for the wrongful acts undertaken by Galleon Management L.P. Further, these actions were inspired, directed and participated in by key insiders, including the defendant Raj Rajaratnam, George Lau and Richard Schutte.

186.    This fraudulent concealment concerned three separate material non-disclosures of material facts: the failure to disclose the existence of the Indemnification Waiver; the Liquidating Trusts, and the depletion of the funds available to honor the Indemnity Provisions; the affirmative misrepresentation of amounts due to Plaintiff for his services as portfolio manager in 2009; and the failure to disclose that the Galleon Group had no intention of honoring the Indemnity Provision based on an interpretation of the Settlement Agreement which it deliberately concealed from Plaintiff and had failed to assert at any time during the negotiations over the Settlement Agreement.

187.    Plaintiff entered into the January 13, 2012 Settlement Agreement in express reliance upon the representation of the manifested intent of the Galleon Management LP, its

officers, directors, agents and attorneys, including individual Defendants, that his rights to be indemnified under the Indemnity Provisions were not in any way infringed or altered.

188.    The Galleon Group intentionally concealed material information; namely, the existence of the Indemnification Waiver and the Liquidating Trusts, that it had created a limited Reserve Account or a "cap" on the dollar amount available to pay indemnity, that the available funds to honor the Indemnity Provisions had been substantially depleted and that it harbored a secret, but wholly unexpressed interpretation of the 2012 Settlement Agreement which would supposedly prevent Plaintiff from receiving his due performance under the Indemnity Provisions.

189.    The intentional concealment of the substantial depletion of the funds was a separate and independent fraudulent act.  The Galleon Group, Raj Rajaratnam, George Lau, and Schutte had actual knowledge that they were withholding material information and thereby falsely and fraudulently representing the financial capability of the Galleon Group to honor the Indemnity Provisions.

190.    The Galleon Group intended that Plaintiff would act upon the material concealment by entering into a settlement agreement detrimental to his interests.  Plaintiff reasonably relied upon continuing viability of the Indemnity Provisions and that no action had been taken to impair or prevent the honoring of such provisions.

191.    This reliance was detrimental as Plaintiff, incurred millions of dollars in attorney's fees in the successful defense of the claims brought against him, among other expenses.

192.    Defendants also intentionally misrepresented the amount of profits Plaintiff generated in 2009, a material fact which induced Plaintiff to accept a $125,000 payment in the Settlement Agreement.  In the negotiations prior to the execution of the Settlement Agreement,

Plaintiff was informed that despite the fact that he had generated profits as a portfolio manager within Defendant Galleon Special Opportunities Management, LLC in 2009 of $83 million, he was not entitled to more than nominal compensation because of large losses occurring in other portfolios. This statement was an intentional misrepresentation because in fact Plaintiff had no responsibility for these portfolios, let alone ran them. Further, Schutte told Plaintiff that there was no other funds left with which to pay him.

193.    Defendants intentionally and wrongfully attributed losses in these portfolios to Plaintiff. This fact was material as Plaintiff would not have accepted the terms of the settlement agreement had he known the true value of the net profits he generated.

194.    This misrepresentation of a material fact was intentional, and was done in order to induce Plaintiff to enter into the Settlement Agreement, and to compromise his rightful claim to compensation based on the normal range of 10% of such revenues or approximately $8.3 million.

195.    Plaintiff was entitled to rely and did in fact reasonably rely upon the false representation and concealment of the material facts concerning his entitlement to compensation.

196.    Third, Plaintiff was fraudulently induced to enter into the 2012 Settlement Agreement by the failure of the Galleon Group, acting through its agents, including Schutte and Lau, to inform him that they secretly harbored an interpretation of the Settlement Agreement under which Plaintiff was entitled to no indemnification whatsoever, despite his express statement that preserving the indemnification right was material to his consideration to enter into the January 13, 2012 Settlement Agreement.

197.    The Settlement Agreement was thus wrongfully procured by intentional fraud and should be rescinded and Plaintiff restored to his rights as they existed immediately prior to its

execution, including the restoration of any applicable statute of limitations to recover his unpaid commissions and compensation.

198.    As a direct and proximate result of the intentional nondisclosure of a material fact, Plaintiff has suffered financial and economic loss and injury.

199.    The defendants Raj Rajaratnam, Lau, Schutte and other unknown insiders of the Galleon Group aided and abetted in the fraud described herein; each had knowledge of the fraud and each provided substantial assistance in the achievement of the fraud; each participated in, inspired and directed the tortious conduct complained of herein, and are jointly and severally liable for the damages incurred as a result of such fraudulent conduct.

200.    WHEREFORE, Plaintiff seeks all rights under New York law to which he is entitled, including but not limited to the rights set forth in New York CPLR §3002(e) to have the agreements rescinded, to obtain monetary damages, or both, and as to all defendants who participated in the fraud set forth herein and to those who aided and abetted the fraudulent conduct.

### COUNT TEN
### BREACH OF EMPLOYMENT CONTRACT: FAILURE TO PAY COMMISSIONS

201.    The allegations of the preceding paragraphs are incorporated herein as if fully set forth. Galleon Management LP and Defendant Galleon Special Opportunities Management, LLC were Plaintiff's employers from 2007 until 2009. Financial forms, such as W-2s, confirm his employment.

202.    Defendant Delta (Cayman) Limited, which, on information and belief, agreed to assume all liability for Defendants' liability, is liable for any breach on the part of Defendant Galleon Special Opportunities LLC.

203.     In addition to his contractual entitlement to be paid under the Indemnity Provisions, Plaintiff was entitled to be paid a commission based upon profits produced for the Galleon Group, including but not limited to, Defendant Galleon Special Opportunities Fund, LLC and Defendant Galleon Management, LLC as the general partner of Galleon Management, LLP. Defendant George Lau, in an affidavit submitted during Defendant Raj Rajaratnam's trial, confirmed that the typical practice at the Galleon Group was to give fund managers 10% of profits for their profits.

204.     During calendar year 2009 Plaintiff generated returns and/ or earnings in the approximate amount of $83 million, and was entitled to be paid a bonus of 10% of such earnings, or no less than $8.3 million, plus $750,000 to $1.0 million as the top ranked technology analyst.

205.     Plaintiff earned such amount by virtue of his generation of profits for Defendant Galleon Special Opportunities Fund, Ltd (as the feeder fund) and a portfolio therein known as the Galleon Special Opportunities Master Fund, SPC, Ltd.  The Investment Manager for these portfolios was Defendant Galleon Special Opportunities Management, LLC, Plaintiff's employer with respect to those portfolios.

206.     It is believed and therefore alleged that as a result of such net profits, that the Galleon Special Opportunities Master Fund, SPC, Ltd. did disburse to its Investment Manager the contractually required 20% of such earnings.

207.     Defendants failed to pay the amounts due to Plaintiff.

208.     The Defendants Galleon Special Opportunities Management, LLC, Raj Rajaratnam, Richard Schutte and George Lau have claimed, among other acts, that they were entitled to offset against the $80 million in earnings certain losses resulting from "Sri Lankan

trades," which were not in fact transactions in Plaintiff's portfolio, but were actually managed by Defendant Raj Rajaratnam.

209.    The Defendants Galleon Management LLC and Galleon Special Opportunities Management LLC breached their contractual employment agreement with Plaintiff by failing to pay him his agreed upon commissions.

210.    The Defendants have wrongfully failed to pay Plaintiff in reliance upon the January 2012 Settlement Agreement.

211.    The Defendants have materially breached the January 2012 Settlement Agreement, and as a result of such material breach, any reciprocal release or duty of Plaintiff under that agreement is now null and void, and Plaintiff is excused from performance under such agreement.

212.    The Settlement Agreement was obtained through the intentional and fraudulent nondisclosure of material facts and may not be the basis for a refusal to honor his entitlement to commissions.

213.    WHEREFORE, Plaintiff seeks monetary damages for breach of contract against the above-named Defendants in an amount to be determined at trial.

<b>COUNT ELEVEN<br><u>PIERCING THE CORPORATE VEIL</u></b>

214.    The allegations of the preceding paragraphs are incorporated herein as if expressly set forth.

215.    The "corporate veil" or separate existence of Galleon Management, SPC, L.P., Galleon Management, L.L.C., and Galleon Offshore, SPC Ltd., should be pierced, and Raj Rajaratnam should be found liable for the wrongful conduct, tortious conduct and breaches of contract of such entities.

216.    At all times relevant herein, as set forth above, Raj Rajaratnam was the sole or principal owner or indirect owner of each of the entities within the Galleon Group, and exercised dominant and complete control of the Galleon Group and its affiliated entities.

217.    Raj Rajaratnam directly or indirectly, caused and permitted the defendants within the Galleon Group to commit the wrongs complained of herein.

218.    On information and belief, that Raj treated the various "separate" entities as simply part of his own private enterprise, and, without regard to corporate formality or separateness, and without independent boards or otherwise, controlled the various entities to achieve his own private gain and to defraud Plaintiff and refuse to compensate him.

219.    For example, Defendants represented that the cap was entered into by and among various entities within the Galleon Group.  It is believed and therefore alleged, however, that the so-called agreement was not the result of an arms-length bargain entered into between two separate entities, but a transaction inspired, concocted, and drive solely by the desire of Defendant Rajaratnam to minimize his own loss and to maximize his own gain.

220.    It is believed, and therefore alleged, that Raj Rajaratnam disregarded the entity formalities by first, orchestrating the "cap" and that the so-called agreement which created the "cap" was done at the direction of Raj Rajaratnam and in a secret agreement with those whom he controlled, and that there was neither notice nor any other vote or consideration by any disinterested person.

221.    SpotTail Management LLC and SpotTail Partners LP are also, on information and belief, alter egos for Raj Rajaratnam and were another vehicle for siphoning assets off of Galleon entities. These entities are based in the same building and employ the same four individuals. SpotTail Partners LP was founded by Schutte in 2010. Raj Rajaratnam invested around $25

million in the fund. He was the single largest investor. Of that, $15 million of which was transferred eight weeks before the beginning of his criminal trial. The broker for this transfer was, on information and belief, Jeffries, formerly a broker for the Galleon Group.

222.    It is believed and therefore alleged that in 2011 or late 2010 Galleon Management LP transferred funds of approximately $95,000, to pay for security deposit and a full year of rent to SpotTail Partners, LP prior to declaring bankruptcy. Defendant Schutte is the Executive Officer of SpotTail Partners, LP. Defendant Lau has stated that SpotTail leased an area in the same building which Galleon Group had its offices, though struggled to recall the exact nature of the arrangement aside from the arrangement that Galleon reimbursed SpotTail and/or Cedar Cove LLC for rental payments. The SEC Form D for 2015 indicated that SpotTail Partners, L.P., raised $60 million in March 2015.

223.    It is also believed and therefore alleged that Cedar Cove Capital, LLC, is an alter ego for the Galleon Group, LLC. Cedar Cove Capital, LLC, according to SEC filings, is the Investment Advisor of SpotTail Partners LP.

224.    All of its employees are former Galleon employees. Lau is the COO and Schutte is the CEO, Cedar Cove was involved in a state court action for unpaid rent, resisted subpoena, and once the hearing date was set on the subpoena, Galleon Management LP filed for bankruptcy. Counsel in that case believes Cedar Cove may be handling assets from Galleon and that Galleon Management LP's filing for bankruptcy, despite there being indication that the company is far from insolvent, may be linked to Cedar Cove Capital, LLC.

225.    Because Cedar Cove Capital LLC, SpotTail Partners LP, and Raj Rajaratnam are all alter egos of the Galleon Group, any claims brought against any Defendant Entity can be imputed to them.

## **PRAYER FOR MONETARY AND DECLARATORY RELIEF**

WHEREFORE, having stated his complaint against the Defendants, the plaintiff prays that this Court entered judgment in his favor and against the Defendants, and order monetary damages and declaratory relief as follows:

a. That the Defendants be ordered to pay consequential, compensatory and other damages in the amount of no less than $13.5 million,

b.  That the Defendants be ordered to pay punitive damages in an amount to be determined by the trier of fact;

c.  That the Defendants be ordered to pay interest, costs and attorneys' fees to the plaintiff in an amount to be determined after the trial.

d.  That the Court declare the Settlement Agreement of January 13, 2012 to be null and void, and rescinded, and that Plaintiff be restored to all of his legal and equitable rights as they existed immediately prior to its execution, including but not limited to the restoration of any applicable statute of limitations.

e. That the Court grant such other relief as the court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all matters triable by jury.

Dated: Washington, DC
        February 2, 2016


_____/s/_____
Jonathan W. Greenbaum
Barry Coburn
Coburn & Greenbaum, PLLC

1710 Rhode Island Ave, NW
Second Floor
Washington DC, 20036
202-657-4490
jg@coburngreenbaum.com
barry@coburngreenbaum.com

**<u>NEW YORK</u>**
99 Hudson Street
Fifth Floor

*Counsel for Plaintiff Rajarengan Rajaratnam*